UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

Court File No:  3:11-cv-00090

Cathy M. Mitchell,

      Plaintiff

vs.

AFFIDAVIT OF JIM LEATZOW

DynCorp International, LLC,

      Defendant.

STATE OF WISCONSIN  )
                   ) ss
COUNTY OF ONEIDA    )

Jim Leatzow being duly sworn, states as follows:

1.     Attached hereto is a true and correct copy of my preliminary report in the

above-captioned matter, stating my opinions and conclusions to date. I offer the

opinions described in my report with reasonable certainty.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
Jim Leatzow

Subscribed and sworn to before me
this 12th day of September, 2013.

_____
Notary Public
Comm exp 6-29-14

EXHIBIT
3

*Cathy M. Mitchell*

*v.*

*DynCorp International, LLC*

*Expert Report*

*provided by*

*Jim Leatzow*
*Leatzow & Associates, Inc.*

*September 6, 2013*

Submitted to:      Wilbur Fluegel, Esq.
                        Fluegel Law Office
                        150 S. 5th Street
                        Minneapolis, MN 55402

Pertaining to:     *Cathy M. Mitchell,* Plaintiff (**Mitchell**)
                                     v.
                        *DynCorp International, LLC* Defendant (**DynCorp**)

                        in the United States District Court of North Dakota, Southeastern Division,
                        Case No. 3:11-CV-00090-KKK

## Introduction

For purposes of this report, I will be referring where appropriate to the Plaintiff Cathy Mitchell generally as "Mitchell" for convenience, clarity and brevity. I will be referring to Defendant DynCorp International, LLC as "DynCorp" for the same reasons.

## Overview

I have been retained as a rebuttal witness to provide my expert opinions on certain insurance related issues between Mitchell and DynCorp. Mitchell is the beneficiary of certain insurance benefits provided by DynCorp resulting from the employment of her husband Thomas Mitchell in 2009 as a professional pilot. After he was hired by DynCorp, Mitchell suffered a fatal plane crash while in the United States and some benefits were paid to Cathy Mitchell while others were improperly denied.

## Leatzow's Experience and Qualifications

After forming Leatzow & Associates, Inc. as a property/casualty/life/health insurance agency in suburban Chicago in May 1975, I expanded the scope of my firm's operations over the years and became licensed nationally as an agent/broker/producer and separately licensed as a surplus lines broker. This effort was undertaken to facilitate the implementation of various insurance programs designed, authored and implemented by me on a national scale. As the author (any use of "I" is intended to include my professional, licensed staff that I personally trained) I was tasked with all functions of bringing unique casualty products to the public including initially literally writing unique policy forms and endorsements that were filed and accepted on an admitted basis in all 50 states plus the District of Columbia beginning in the 1980's.

My firm was further responsible for the marketing, selling, underwriting, pricing and physical issuance of new and renewal casualty policies to thousands of policyholders sold both directly and through brokers in my role as a wholesaler over the course of several decades between 1980 and 2005. In addition, my firm was retained as a Third Party Administrator claims handler for all program

participants as well as adjudicating all claims from the same programs nationally. Then in 1993, I formed a reinsurance company I own that remains active today, which further expanded my experience and skill set in the commercial insurance marketplace on a national scale.

I have also been a licensed pilot for 51 years. My license qualifies me as a commercial, multi-engine land and single engine sea, instrument rated pilot. As a licensed pilot I understand the requirements of pilot licensure which have been raised in this dispute.

In short, given my experiences spanning several decades of performing nationally and internationally, I believe I am properly qualified to offer opinions regarding the relationship, custom, practice and standard of care expected in the sale of insurance products to the public.

## Thomas Mitchell

Thomas Mitchell was recruited by DynCorp from his previous employer, Presidential Airways, for whom he worked in the same theater of operations at approximately the same time that the prior employer's contract with the U.S. government was expiring. In order to fulfill its role as a successor on that contract, DynCorp had to recruit as many pilots as possible from the predecessor firm and in November 2009, DynCorp sent its representative Karla Micka, DynCorps' Director of Human Resources for the "AirWing" program along with several other DynCorp personnel to handle the transitioning of that workforce. The other employees included Steven Resnick, Jeannie Hutchinson and Mr. Aljandro Sanchez. Those individuals were representing DynCorp addressing "the overall business aspects of the transition of the contract" and to "address compensation issues" and "facilitate part of the on-boarding process in terms of collection of forms, administration of pre-employments drug tests, training in our time and labor system and our expense reporting system." (Micka 13)

Ms. Micka testified in her deposition "I supervise the recruiting group" (Micka 6) and "My role in the trip (to Iraq for 11 days) was to transition an incumbent workforce to the new contract." (Micka 10) DynCorp's explicit intent was to encourage existing pilots, Thomas Mitchell included, to become a DynCorp employee pilot.

Thomas Mitchell became employed by Defendant DynCorp as a pilot beginning December 3, 2009 for work as a helicopter pilot in Iraq. Retaining counsel has asked that I assume as true that his role and assigned duties while an employee included serving as "top cover" for air transportation, to assure overall visibility and detection of safe routes of travel during the transport of people and material primarily for medical relief of U.S. service and support personnel engaged in the armed conflict there while being flown by other pilots.

3

While back in the United States, off-duty from his employment from DynCorp, Thomas Mitchell purchased a light sport aircraft known as a Challenger II for which he had trained and become qualified to fly as a pilot. Thomas Mitchell suffered a fatal crash in his plane on November 1, 2010 in the vicinity of Sauk City, Wisconsin.

Cathy Mitchell, Thomas Mitchell's wife was the beneficiary of the DynCorp provided MetLife life insurance policy and accidental death and dismemberment coverages. Upon presentation of the claim to MetLife, MetLife paid $218,100 basic life benefits to the beneficiary for the deceased pilot, but denied $1,343,200 death benefits under the Accidental Death and Dismemberment (AD&D) extension of coverage in a letter to Cathy Mitchell dated December 7, 2010.

## Opinions to Be Expressed

Based upon the case related testimony, documents and materials reviewed to date, additional information described herein, my training and experience described above and below and the reasoning provided in this report, I have formed the following opinions:

1. Marketing insurance products generally and life insurance products specifically to the lay public by unlicensed individual's mandates a duty to investigate and understand the specific insurance products such individuals are promoting in order to establish clarity of the coverages being offered to the person for whom the coverages are intended. DynCorp's Director of Human Resources, Ms. Karla Micka, admitted under oath she was unaware of the specific exclusions in the MetLife policy central to this litigation at the time she was presenting the benefits package information to the potential employees.

2. The MetLife policy did contain life insurance benefits for pilots under the basic form, but excluded life benefits under the Accidental Death and Dismemberment (AD&D) extension of coverage based solely on the pilot exclusion and for no other reasons. As such, MetLife paid benefits according to the policy it had issued for the benefit of Thomas Mitchell and his beneficiary.

3. I disagree with DynCorp's expert, Mr. Steve Bruss to the extent he wrongly opined beyond the correct, legitimate, specific, affirmative reason given by MetLife for its denial of coverage under the AD&D section of the policy. Mr. Bruss testified that the denial of benefits to Mitchell, in his opinion, would have exceeded MetLife's reason and been appropriate because Mitchell had been:

   - Piloting an aircraft "for testing or experimental purposes"
   - Committing a felony as an improperly licensed pilot
   - Acting as a pilot without an appropriate pilot license

4

4. DynCorp created an environment of expectations on which prospective pilots, Thomas Mitchell included, reasonably relied upon for life insurance benefits while conducting themselves as employee pilots for DynCorp. To the extent that such life coverage was provided under MetLife's basic coverage, but was non-existent under the AD&D extension and there was no warning on the application or explanation provided in the briefings of that fact, DynCorp is negligent and directly responsible for any lapse in coverage that reasonably should have been explained or provided.

## Basis for the Opinions Expressed

### 1. *Marketing insurance products*

- Karla Micka admitted in her deposition testimony (Micka 16-20) that she and the other DynCorp employees conducted employee orientation sessions for approximately potential hires at a time. Those sessions consisted of:
    - A general welcome and PowerPoint presentations of:
        - Organizational overviews
        - Paperwork hiring requirements
        - Time and labor system training
        - Expense report training
        - Drug screening
        - An overview of the DynCorp benefit package
    - Ms. Micka further testified that each of the potential hires attending received packets of information including various forms necessary to be hired. One such form entered into evidence (Exh. 107) was a DynCorp "New Hire Check List" form with Thomas Mitchell's name hand printed at the top with lines for initials presumably indicating completion of the various tasks and forms required as part of the hiring process. The State Tax Form line has written in an "ND" next to it, which is the abbreviation for Thomas Mitchell's state of residence, North Dakota.
- While Karla Micka testified "the benefits presentation is not a recruiting tool" because "It's typically administered after an employee joins the company", the fact remains that the people attending these sessions had not been hired and were being asked to review the various benefits on PowerPoint presentations and on handouts prior to being hired by DynCorp. (Micka 25) Ms. Micka also admitted that she personally "delivered the presentation on the benefits overview". (Micka 29)

5

- Entered into evidence during her deposition was a copy of the PowerPoint presentation (Exh 107) that described various benefits provided by DynCorp. The life insurance benefits were contained on pages 7 through 11 of the presentation. When asked about the specifics of the presentation and whether a pilot would be covered if they died while a member of a flight crew, Ms. Micka testified "There is no mention of exclusions in this" referring to the presentation. (Micka 31)

- Karla Micka was then questioned about whether she knew about the exclusion in the MetLife policy "that says that members of an air crew are not covered if they should die in a plane crash?" Micka testified "I was not aware of specific exclusions". (Micka 31) She further testified that if questioned about her level of knowledge she was presenting to the potential employees regarding whether or not coverage applied while operating an airplane, Ms. Micka testified "that's not what we would go to in that level of specificity". (Micka 32) Moreover there was no testimony that actual policy forms and endorsements were provided to the attendees being recruited to review.

- Finally Ms. Micka admitted under oath that she did not know whether the life insurance (including accidental death and dismemberment) being presented by her in the benefits package did or did not cover death while part of an air crew or piloting an aircraft. (Micka 32-33)

- The potential employees must have felt reasonably comfortable with their understanding of the benefits being described by Ms. Micka because she testified that out of the approximate 150 attendees over three separate presentations, there was not a single question asked by any of the attendees whether there were exclusions that applied regarding pilots and members of air crews. (Micka 43-44)

- As a result of the presentations made to the Presidential employees, the majority were hired by DynCorp. (Micka 40-41)

2. *MetLife's coverage denial was appropriate for the single reason provided*

- MetLife paid out under the basic coverage of their policy as they were required to do since coverage for pilots was included.

- MetLife's denial of life benefits under the AD&D extension of coverage was appropriate because the policy was clear and unambiguous regarding that coverage exclusion.

3. *I disagree with DynCorp's expert Steve Bruss*

- Thomas Mitchell's aircraft, Challenger II aircraft qualified as a "Light Sport Aircraft". As such it was being piloted by Thomas Mitchell as a light sport pilot for which he had been trained and endorsed by a Certified Flight Instructor.

6

- There has been no testimony or evidence presented anywhere in this dispute that a felony had been committed by Thomas Mitchell, except in the report by Mr. Steve Bruss. It appears Mr. Bruss made the assumption that Mr. Mitchell was not trained or endorsed or duly qualified to fly the Challenger II aircraft central to this dispute which is simply false. A review of the affidavit provided by Thomas Mitchell's flight instructor, Mr. Steven Krueger, reveals Mitchell received the requisite training and logbook endorsement necessary to qualify Thomas Mitchell as a licensed, fixed wing, light sport pilot.

4. ***DynCorp should have provided the life insurance benefits it portrayed as included***

  - Donald Platt, DynCorp's Director of Global Benefits testified that to secure coverage for pilots under the AD&D extension of coverage under a group life insurance policy would "cost double". (Platt 11) As a pilot of 51 years and as an employer of 38 years who has secured coverage for myself including for my activities as a pilot under group-type policies, it is simply false that such coverage necessarily or automatically "costs double". The underwriting and pricing of AD&D pilot coverage is totally dependent on various underwriting criteria including number of hours flown, type of equipment flown, potential FAA violations, accidents and similar underwriting criteria. I have been provided no evidence that Mr. Platt was a licensed insurance producer and assuming that to be true, his comments appear picked out of the air without a reasonable basis in fact.

  - In this dispute, Mr. Thomas Mitchell has been presented as a pilot with substantial pilot-in-command time as a commercial helicopter pilot, a licensed light sport aircraft pilot, without evidence of FAA infractions who subsequently died in a plane crash while flying legally in the United States.

  - DynCorp made various representations to potential pilots, Thomas Mitchell included, regarding life insurance coverage for their work as pilots. Pursuant to the affidavit and multiple statements presented in this case by other pilots that attended the DynCorp briefings, those pilots reasonably believed that life insurance coverage was being provided to them in their role as pilots and did not consider that life insurance under the AD&D extensions of coverage would be denied. When you consider the level of danger inherent in the role of the DynCorp pilots, it is unreasonable to believe that the pilots would receive only partial life insurance (under the basic form) while being denied life insurance because of the very job they were being hired to do for DynCorp, and without any mention of such an exclusions during their pre-hiring, benefits briefings.

7

**Role of Jim Leatzow as an expert**

I have been retained as an expert in this case. I have reviewed various pleadings, depositions testimony, correspondence and documents provided me and referred to in this report in forming my opinions in this case. A general list of the documents I have reviewed to date is shown below. My opinions expressed in this report are based upon:

- A reasonable degree of professional certainty within the insurance industry, and;

- My 37 years in the property/casualty/life/health insurance business which includes:

  - Having performed duties as an underwriting Managing General Agent on a national basis for 27 years;

  - Having processed (underwritten, quoted, issued, and renewed) thousands of insurance applications, policies and renewals over the course of my career while functioning as an insurance company branch office as a Managing General Agent;

  - Having been previously and properly licensed in all 50 states and the District of Columbia as an insurance producer;

  - Having been licensed specifically in the State of Nevada for 15 years between 1985 and 2005; and for 23 years in California for the same time period;

  - Having performed duties as a Third Party Administrator property/casualty claims handler for 21 years on a national basis;

  - Having formed, operated and owned an insurance company since 1993 that continues operations insuring risks nationally;

  - Having authored and filed unique insurance applications, policies and endorsements approved and admitted in all 50 states' Departments of Insurance

- Having been a licensed pilot in the United States for over 51 years

**Qualifications**

My qualifications to render these opinions are set forth below and included on my CV which is attached to this report.

**Education**

- B. A., Ripon College - 1969

8

**Experience**

- 37 years of property/casualty insurance industry & agency experience
- 27 years national managing/underwriting general agent experience, including writing policy documents and unique endorsements
- 20 + years of underwriting experience
- 13 years reinsurance experience
- 21 years national Third Party Administrator (TPA) - claims handling
- 25 years licensed property-casualty agent/broker in 50 states until October 2005
- Licensed surplus lines broker in 46 states plus D.C. until October 2005
- Certified insurance & reinsurance arbitrator

**Professional Memberships**

- Independent Insurance Agents & Brokers of America (IIAA)
- ARIAS Certified insurance & reinsurance Arbitrator
- Reinsurance Association of America (RAA)
- Chartered Institute of Arbitrators (U.S./U.K./Bermuda)

**Case Related Materials**

In reaching my opinions above, I relied on my experience, skill, education and other relevant information as well as my review of the following case related materials:

- Complaint with exhibits
- Defendant's Answer to the Complaint
- Plaintiff's 26 (a)(1) Disclosures
- Defendant's Expert Disclosures
- Defendant's Answers to Interrogatories
- Plaintiff's Response to Request for Production of Documents
- Challenger Aircraft descriptive information
- NTSB Report regarding accident involving Thomas Mitchell
- DynCorp Presentation Materials
- MetLife Insurance Policy purchased by DynCorp for employees
- Deposition of Catherine Mitchell with 27 exhibits
- Deposition of Donald Platt without exhibits
- Deposition of Karla Micka without exhibits

9

- Deposition of Steve Resnick without exhibits
- Affidavit of George Seay
- Statement of John Fehrs
- Statement of Joshua Cole Perdue
- Statement of Billy Young
- Statement of Jerome Hager, Jr.
- Statement of Ryan C. Zierman
- Affidavit of Steven Krueger

**Publications Authored by the Undersigned in the Last 10 Years**

I have authored no publications in the last 10 years.

**Compensation:**

I am being compensated at the rate of $300 per hour for my time and expertise, plus actual costs as and when incurred.

**Leatzow's 4 year history of testimony at trial or deposition is attached.**

I reserve the right to amend my report and any other testimony should additional information or case materials become available relative to this case.

Respectfully submitted September 6, 2013

Jim Leatzow, President
Leatzow & Associates, Inc.
1265 Pine Isle Road
Three Lakes, WI 54562
715-546-3300

**Leatzow's testimony at trial or deposition within the preceding four years (as of 09-6-2013):**

| | | | |
|---|---|---|---|
| 1. | 06-16-2009 | Deposition | Howell & Brothers v. McFadden Insurance |
| 2. | 08-26-2009 | Trial | Pelican Tug Co. v. American Home Assurance |
| 3. | 10-16-2009 | Deposition | Bonilla v. Valley Insurance Agency |
| 4. | 01-12-2010 | Deposition | Agle v. State Farm |
| 5. | 02-18-2010 | Deposition | Ostrovitz & Gwinn v. First Specialty Insurance |
| 6. | 04-01-2010 | Deposition | The Villa v. Trissel Graham & Toole |
| 7. | 06-02-2010 | Deposition | Evanston Insurance Co. v. GT Fabricators |
| 8. | 06-23-2010 | Trial | The Villa v. Trissel Graham & Toole |
| 9. | 10-01-2010 | Deposition | Hastings Mutual Ins. Co. v. Habrie |
| 10. | 01-31-2010 | Deposition | Catholic Healthcare West v. CA Ins. Guarantee |
| 11. | 02-22-2011 | Deposition | Williams v. Fehrenbacher Ins. Agency |
| 12. | 05-18-2011 | Deposition | AutoOwners Ins. Co.  v. Thomson Construction |
| 13. | 07-15-2011 | Arbitration | Iowa Municipal Ins. v. Cornhusker Casualty |
| 14. | 11-18-2011 | Deposition | Go Wireless v. Northern Ins. Associates |
| 15. | 12-28-2011 | Deposition | Charney v. American Family Agent Storzer |
| 16. | 02-22-2012 | Deposition | Rick Bounds Auto Sales v. Western Heritage Ins. |
| 17. | 04-30-2012 | Deposition | Wethey v. Zurich American Ins. Co. |
| 18. | 10-04-2012 | Deposition | Arch Insurance Co. v. Allegiant |
| 19. | 11-29-2012 | Deposition | IPP v. CynoSure |
| 20. | 12-06-2012 | Deposition | DASNY v. KPF Associates |
| 21. | 12-14-2012 | Deposition | Lloyds v. Bartle |
| 22. | 01-25-2013 | Deposition | U.S.S.S.A. v. Nelson Chipman & Burt |
| 23. | 02-11-2013 | Trial | U.S.S.S.A. v. Nelson Chipman & Burt |
| 24. | 03-01-2013 | Deposition | Kennedy v. Wisconsin Mutual Ins. Co. |
| 25. | 03-07-2013 | Deposition | American Design & Build v. Houston Casualty |
| 26. | 03-19-2013 | Deposition | Secura Insurance Co. v. Jagminas |
| 27. | 06-10-2013 | Deposition | Follenweider v. Assurance Agency |

11

# Jim Leatzow

## *Expert Services / Litigation Support / Insurance - Reinsurance Arbitration*



37 years of property/casualty insurance industry & agency experience

27 years national managing / underwriting general agent experience

13 years reinsurance experience

21 years national Third Party Administrator (TPA) - claims handling

25 years licensed property-casualty agent / broker in 50 states until October 2005

Licensed surplus lines broker in 46 states + D.C. until October 2005

Certified insurance & reinsurance arbitrator

**President, Leatzow & Associates, Inc. - (consulting firm) - 1975 to present**
**President, Three Lakes Insurance Co., Ltd. (reinsurer) - 1992 to present**

**Practical insurance & reinsurance industry experience including:**

- Property-Casualty **Agent / Broker / Producer** duties, obligations & standard of care
- Managing General Agent **(MGA) / Wholesaler** duties, obligations & standard of care
- Third Party Administrator **(TPA)** claim handling obligations & standard of care
- Qualified **bad faith expert** with testimony in state & federal courts
- **Errors & Omissions** claims handler (20 years+)
- **Coverage expert** involving appropriateness, placement & disputes involving:
  General Liability ♦ Professional Liability ♦ Property ♦ Surety ♦
  Errors & Omissions (E&O) ♦ Claims-made trigger ♦ Excess - Surplus lines
- **Construction** industry insurance placement & claims specialization (20+ years)
- **Underwriting** experience (20+ years)
- History of representing both plaintiff & defense equally in expert testimony consulting
- Provided testimony in 5 of 11 federal districts / Rule 26 Report specialization
- 160+ Expert retentions / 40+ depositions / 8 trial testimonies / 40 arbitration retentions
- Active reinsurance company officer
- **No charge for travel time, coast to coast**

**Website:   www.Leatzow.com**                    **Education:** B.A., Ripon College – 1969

**Professional Memberships:**
- ♦   Independent Insurance Agents & Brokers of America (IIAA)
- ♦   ARIAS Certified insurance & reinsurance Arbitrator
- ♦   Chartered Institute of Arbitrators (U.S. / U.K. / Bermuda)



**1265 Pine Isle Road, Three Lakes, WI 54562**
**Office: 715-546-3300   /   Jim@Leatzow.com**
**www.LEATZOW.com**

(6/13)